P. F. SCHEIDELMAN & SONS, INC., Plaintiff, *v.* WEBSTER BASKET COMPANY, Defendant.

Supreme Court, Oneida County, June 1, 1932.

*Pritchard, Deecke & Pritchard,* for the plaintiff.

*Marsh & Van Duser,* for the defendant.

SMITH, E. N., J.   The action is brought to recover damages on account of wrongful attachment of property.   It appears that one William E. Miller had delivered to the Red Creek Cold Storage Company, Inc., at Red Creek, N. Y., 3,500 bushels of apples owned by him, for storage, and received therefor negotiable warehouse receipts, which were indorsed by said Miller and purchased by the plaintiff; thereafter the defendant herein, a creditor of said Miller, procured a warrant of attachment against said apples, pursuant to which the sheriff of the county of Wayne levied upon said apples; that thereafter, on the motion of said Miller, said warrant of attachment was vacated on the ground that there was no basis in fact for its issuance, and that the plaintiff was kept out of possession of said apples for about forty-six days, during which time plaintiff claims it was unable to sell or dispose thereof and the same deteriorated in quality and depreciated in value to the plaintiff's damage in the sum of $2,500, which sum in this action it seeks to recover from the defendant.   The plaintiff has its place of business in Oneida county.   The apples at the time of the attachment were in Wayne county.

The motion to change the place of trial is made under subdivision 3 of section 184 of the Civil Practice Act which provides as follows: " An action in the Supreme Court for any of the following causes must be tried in the county where the cause of action or some part thereof arose:   *   *   *

" 3. To recover a chattel distrained, or damages for distraining a chattel."

The sole question here involved is whether the seizure of property pursuant to the statutory provisional remedy of attachment constitutes a distress of property.   The remedy of distress was one at common law, and the ordinary conception of it was the seizure of personal property upon one's land to secure the payment of certain claims of debts.   There was distress for rent due, distress of cattle damage feasant, and distress for taxes.   The right of distress does not arise out of any specific lien.   The element of common-law distress, excepting in distress for taxes, was that it was a right of an individual to seize personal property of another upon his own land without any action at law and to hold it as a pledge or security for rent due or damage done by cattle.   (*Boyd* v. *Howden,* 3 Daly, 455.)

Distress for rent was abolished in the State of New York by chapter 274 of the Laws of 1846. The remedy of the person whose property was thus distressed was by replevin. (Bouvier Law Dict. [3d ed.] 892; Distress for Rent, 16 R. C. L. 1003; Distraining of Animals, 1 id. 1140; Distress for Taxes, 26 id. 383.)

The right of attachment existed at common law. Its original purpose was the acquisition of jurisdiction of a defendant by compelling his appearance in court through the seizure of his property. It involved seizure pursuant to the order of a court, as distinguished from distress, which was the act of an individual without the intervention of legal process.

Diligent search has failed to disclose a single case where it has been held that the seizure of property by an order or warrant of attachment has been held to be a distress. It is true that in the case of *Penoyar* v. *Kelsey* (150 N. Y. 77), in speaking of common-law attachment, the Court of Appeals used this language: " It was part of the service of process in a civil action through a species of distress, in which the goods attached were the ancient *vadii* or pledges. (*Bond* v. *Ward*, 7 Mass. 123, 128; Gilbert's Law of Distress, 24.) As was said in the case last cited, ' the practice of attaching the effects of a defendant and holding them to satisfy a judgment, which the plaintiff may recover, when, perhaps, judgment may be for the defendant, is unknown to the common law, and is founded on our statute law.' Its present purpose is not to compel appearance by the debtor, but to secure the debt or claim of the creditor. It is a proceeding *in rem*. * * * It exists, as a provisional remedy, only when authorized by statute."

Distress applies only to personal property. Attachment as a provisional remedy applies to both personalty and realty. The distinguishing feature is that distress could be exercised by one having the right to distrain without resort to legal process, while attachment can only be had upon order of the court. Common-law attachment was for the purpose of acquiring jurisdiction; statutory attachment has in it the added element of the seizure of property as security for a debt claimed.

Distress for rent having been abolished, we have left in the law of this State distress for taxes and distraining animals damage feasant, and also the provision of section 184 of the Civil Practice Act, which provides, as above, that actions " to recover a chattel distrained, or damages for distraining a chattel " must be brought in the county where the cause of action arose.

Efforts to extend the meaning of distress so as to cover all manner of seizures of chattels have thus far failed. It has no application to seizures under sections 65 and 66 of the Personal Property Law

(added by Laws of 1922, chap. 642), ▌ applicable to conditional sales (*Adie* v. *Knabe & Co. Mfg. Co.*, 124 Misc. 655), nor to an action in equity to enjoin a defendant from removing or interfering with chattels which the plaintiff claims to own and for damages sustained because of wrongful threats and attempts to remove such property. (*Page Belting Co.* v. *Joseph*, 131 Misc. 373.)

The defendant relies upon language used by the court in *Adie* v. *Knabe & Co. Mfg. Co.* (*supra*), wherein the court said: "When the word ' distrained ' is used in said subdivision 3 [of section 184 of the Civil Practice Act], if given any meaning at all, it must be taken in its everyday common sense meaning, and denotes most any unlawful taking, keeping, or withholding of a chattel." This language is *obiter dictum*. There is no statutory definition of " distress " or to " distrain." Without such definition, these words must be given their meaning at common law. There is no instance in this State where the definition of distress has been expanded so as to include attachment. No instance has been found in the common-law decisions where attachments have been covered under the definition of distress.

This subject, however, has been discussed in another jurisdiction. In *Smithdeal* v. *Wilkerson* (100 N. C. 52) the North Carolina Code provided that actions "for the recovery of personal property, distrained for any cause " must be " tried in the county in which the subject of the action, or some part thereof, is situated." In North Carolina all forms of common-law distress have been abolished. The court said: " ' When a statute makes use of a word, the meaning of which was well ascertained at common law, the word will be understood in the sense it was at common law.' " Although common-law distress has been abolished, the action being what is known as an action for claim and delivery, the court said, in denying a motion to change the place of trial: " Claim and delivery is not a substantive *action*, but is only provisional and ancillary to the action for the recovery of personal property, where the plaintiff seeks to get possession of the property, pending the action, and in this respect it is not unlike the old action of Replevin, which would not lie against an officer who had seized property under legal process or ' against persons holding the same in custody of the law.'

" The plaintiff is not obliged, when he brings an action for the recovery of personal property, to make the affidavit and give the undertaking required for Claim and Delivery. The latter is only ancillary, and if he does not give such undertaking, the judgment, if he recover, as in the old action of Detinue, is for the possession of the property, or for its value, and damages for its detention.

" It may be that great inconvenience and difficulty may sometimes arise, in the enforcement of the ancillary remedy of Claim and Delivery, when the plaintiff resides in a county at a great distance from that in which the defendant, from whose possession the property is taken, resides; but this cannot affect the clear meaning of the statute, which allows actions for the recovery of personal property (unless ' distrained for any cause ') to ' be tried in the county in which the plaintiffs, or the defendants, or any of them, shall reside at the commencement of the action.' "

On the ground that property attached pursuant to the provisions of the statute is not distrained property, and that statutory attachment does not constitute distress, the action being a transitory one, and no question of convenience of witnesses having arisen, the motion to change the place of trial is denied, with ten dollars costs to the plaintiff.

Ordered accordingly.